IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA


| | | |
|---|---|---|
| CITY OF GRASS VALLEY, | ) | 2:04-cv-00149-GEB-DAD |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NEWMONT MINING CORPORATION, a | ) | |
| corporation; NEWMONT USA LIMITED, | ) | |
| a corporation; NEWMONT NORTH | ) | |
| AMERICAN EXPLORATION LIMITED, a | ) | |
| corporation; NEW VERDE MINES LLC, | ) | |
| a limited liability company; | ) | |
| NEWMONT REALTY COMPANY, a | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff (hereinafter sometimes referred to as "the City")
moves for summary adjudication on its claim that Defendants
(hereinafter sometimes referred to as the "Newmont entities" or
"Newmont") are liable under section 107 of the Comprehensive
Environmental Response, Compensation, and Liability Act ("CERCLA").
42 U.S.C. § 9607; (Pl.'s Mot. at 2:1-8.)  Defendants oppose the

motion.  Oral argument on the motion was held on November 5, 2007.[1]
For the following reasons, the motion is denied.

I. Background

The City owns property upon which it operates a Waste Water
Treatment Plant ("WWTP").  (Pl.'s Statement of Undisputed Facts
("SUF") ¶ 15.)  In 2000, the City discovered an opening to the Drew
Tunnel on its property.  (Id.)  The Drew Tunnel is part of the mine
workings of the Massachusetts Hill Mine, which is no longer an
operating mine.  (Defs.' Resp. to Pl.'s SUF ¶ 5.)  The Drew Tunnel
discharges contaminated water from the Massachusetts Hill Mine onto
the City's property; specifically, water containing elevated levels of
iron, manganese, aluminum, copper, lead, zinc and mercury.  (Pl.'s SUF
¶ 15; Defs.' Resp. to Pl.'s SUF ¶ 6; Eickmeyer Decl. Ex. 1 ¶ 1.)  The
City asserts that the Drew Tunnel also drains contaminated water from
the surrounding Empire-Star Mines.  (Pl.'s SUF ¶ 8.)  In 2000, the
City routed the Drew Tunnel discharge through its WWTP.  (Id. ¶ 18.)
The City now seeks reimbursement for the cost of treating this
discharged water under section 107 of CERCLA, arguing Defendants are
liable as owners and/or operators of the Drew Tunnel and the Empire-
Star Mines.  (Pl.'s Mot. at 2:2-14, 4:18-23.)

II.  Standard of Review

Summary judgment is appropriate if, when viewing the
evidence in the light most favorable to the nonmoving party, there is
no genuine issue of material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(c); Lopez v. Smith,

---

[1]   Oral argument was limited to the question of whether
Defendants are present owners or operators of the Massachusetts Hill
Mine and the Drew Tunnel, and the question of whether any Defendant is
exposed to liability under CERCLA for that purported ownership.

203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).  There is no genuine issue of fact if the movant shows that, based on the summary judgment record, a rational trier of fact could not find in favor of the nonmovant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [documents] . . . which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If this burden is met, then the nonmovant must counter with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  All reasonable inferences that can be drawn from the evidence "must be drawn in the nonmoving party's favor."  Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

III.  CERCLA Liability

Section 107 of CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986, prescribes;

> the owner and operator of . . . a facility, [or] any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for . . . any . . . necessary costs of response incurred by any [private party] consistent with the national contingency plan . . . .

42 U.S.C. § 9607.  To prevail on its section 107 claim, the City must establish that (1) the site at issue is a "facility"; (2) there has been a release of a hazardous substance; (3) a Defendant is a present owner or operator, or a past owner or operator of the facility; and

(4) appropriate response costs have been incurred.  <u>Nixon-Egli Equip.</u>
<u>Co. v. John A. Alexander Co.</u>, 949 F. Supp. 1435, 1441 n.4 (C.D. Cal.
1996) (citing 42 U.S.C. § 9607(a)).

<u>A. The Facility at Issue</u>

Section 101(9) of CERCLA defines a facility as, *inter alia*,
"any site or area where a hazardous substance has been deposited,
stored, disposed of, or placed, or otherwise come to be
located . . . ."  42 U.S.C. § 9601(9)(B).

The City argues that the Drew Tunnel, the Massachusetts Hill
Mine (which is one of the Empire-Star Mines), and the other Empire-
Star Mines together constitute a "facility" under CERCLA because water
discharged from the Drew Tunnel contains pollutants which come from
the Massachusetts Hill Mine and the surrounding Empire-Star Mines.
(Pl.'s Mot. at 3:10-5:24, 6:20-7:28.)  Defendants admit that the
Massachusetts Hill Mine and the Drew Tunnel together are a facility.
(Defs.' Opp'n at 3:12-16.)  Accordingly, the portion of the City's
motion that seeks determination that the Massachusetts Hill Mine and
the Drew Tunnel together (hereinafter "the facility") meet CERCLA's
definition of a facility is granted.

Defendants argue, however, that the Massachusetts Hill Mine
is not connected to any other Empire-Star Mine and, therefore, the
facility cannot include any of the other Empire-Star Mines.  (Defs.'
Opp'n at 4:22-5:3.)  The summary judgment record, considered in the
light most favorable to Defendants, supports their position.
Therefore, the portion of the City's motion that seeks determination
that the other Empire-Star Mines also comprise the facility is denied.

B. Release of Hazardous Substances

        The City argues that "[t]he discharge of iron, manganese, aluminum, copper, lead, and mercury into the environment from [the] facility through the Drew Tunnel establishes a release of hazardous substances" under CERCLA.  (Pl.'s Mot. at 8:9-21 (citing 42 U.S.C. § 9601(14)(A)-(D)).)  Defendants admit that water discharged from the Drew Tunnel onto the City's WWTP property contains elevated levels of those substances.  (Def's Resp. to Pl.'s SUF ¶¶ 5, 6, 7, 8.)

        Section 101(22) of CERCLA defines "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment . . . ."  42 U.S.C. § 9601(22).  The discharge of contaminated water from the Drew tunnel onto the City's WWTP property meets this definition of a release.  Additionally, "mercury is a hazardous substance under CERCLA . . . ."  United States v. Mirabile, 1985 WL 97, at *18 n.20 (E.D. Pa. Sept. 6, 1985).  Therefore, there is no genuine issue of material fact regarding whether the facility has released a hazardous substance.  Accordingly, this portion of the City's motion is granted.

C. Owner and Operator Liability

        The City argues that "Newmont is the owner and operator of the Empire-Star Mine 'facility,' including the Massachusetts Hill Mine and the Drew Tunnel."  (Pl.'s Mot. at 9:20-21.)  Defendants rejoin that "[t]he only Defendant who has any interest of any kind at the City's WWTP Property is New Verde Mines LLC ["New Verde"]," and that the City owns the entire fee estate at the property, while New Verde only owns "the limited right to mine, extract and take minerals lying more than 50 feet beneath the surface, as well as a surface access

right to extract and explore for such minerals." (Defs.' Opp'n at 6:3-22.)

CERCLA extends liability to a current owner or operator of a facility, and to a past owner or operator of a facility at the time of disposal of a hazardous substance under CERCLA.  42 U.S.C. § 9607(a)(1),(2).  Each category of liability is considered.  <u>See Commander Oil Corp. v. Barlo Equip. Corp.</u>, 215 F.3d 321, 328 (2d Cir. 2000) (noting that owner and operator liability are distinct and separate concepts).

1.  Current Owner

The City has shown that New Verde currently owns the mineral rights to the Massachusetts Hill Mine and the Drew Tunnel.  The Empire Star Mines Company operated the Empire-Star Mines, which included the Massachusetts Hill Mine, from 1929 to 1956.  (<u>See</u> Bardwick Decl. Exs. 9, 10, 11, 12, 16.)  Defendants admit that in 1957 the Empire Star Mines Company merged into Newmont Mining Corporation.  (Bardwick Decl. Ex. 12 (Defs.' Resp. to Req. for Admis. ("RFA"), Set One) at RFA 12.)  Defendants further admit that in 1957 Newmont Mining Corporation conveyed the Empire-Star properties to New Verde Mines Co.; New Verde Mines Co. later transferred its assets to Newmont Exploration Limited in 1963.  (<u>Id.</u> at RFAs 14, 15.)  Newmont Mining Corporation published a report in 1975 which described Newmont Exploration Limited, a wholly owned subsidiary of Newmont Mining Corporation, as owning the mineral rights to the Massachusetts Hill Mine.  (Bardwick Decl. Ex. 40 at 1, 2, 8.)  Another report prepared for Newmont Mining Corporation in 1986 listed the Empire-Star Mine as a Newmont interest for sale and noted that the Empire-Star Mine included the Massachusetts Hill Mine. (Bardwick Decl. Ex. 44 (Versar Report) at 1.)  Another report

published in 1993 discussed Newmont Exploration Limited's continued ownership of the properties listed in the Versar report. (Bardwick Decl. Ex. 45, (Fleming Report) at 7, 15.)  In 1998, Newmont Exploration Limited sold its Empire-Star properties to Newmont North America LLC. (Bardwick Decl. Ex. 12 (Defs.' Resp. to RFA, Set One) at RFA 25.)  Newmont North America then changed its name to New Verde Mines LLC.[2]  (Id. at RFA 26.)  New Verde also owns the Drew Tunnel because it is part of the subterranean workings of the Massachusetts Hill Mine.  See W.C. Crais III, Right of Owner of Title to or Interest in Minerals Under One Tract of Use Surface, or Underground Passages, in Connection with Mining Other Tract, 83 A.L.R.2d 665 §§ 2, 6[a] (1962) ("[O]wnership of minerals in place necessarily carries with it ownership of the space remaining after their removal . . . .").  Defendants have provided no evidence to dispute New Verde's ownership of the mineral rights at the Massachusetts Hill Mine and the Drew Tunnel.  (See Defs.' Resp. to Pl.'s SUF ¶ 1.)

Defendants counter by arguing that New Verde's mineral right ownership interests do not make New Verde a liable party under CERCLA because "a mineral right" and the "right to use underground tunnels" are "akin to [] easement[s], which ha[ve] specifically been held insufficient to establish 'ownership'" as that term is used in CERCLA. (Defs.' Opp'n at 7:10-21 (citing Long Beach Unified Sch. Dist. v.

---

[2]     In addition, in a May 1, 2007 Draft Cleanup and Abatement Order for Drew Tunnel, the Executive Officer of the California Regional Water Quality Control Board Central Valley Region found that "New Verde Mines LLC, a subsidiary of Newmont, retains certain mineral rights in the area, including mineral rights at the Massachusetts Hill Mine and the Drew Tunnel." (Eickmeyer Decl. Ex. 1 (Draft Cleanup and Abatement Order, Drew Tunnel Nevada County) at ¶ 15.) (See also id. ¶¶ 2, 1, 14; Eickmeyer Decl. Ex. 2 (July 25, 2007 California Water Code § 13267 Order) at 2 (adopting the above mentioned findings from the May 1, 2007 Draft Order).)

1  <u>Dorothy B. Godwin Cal. Living Trust (Long Beach)</u>, 32 F.3d 1364, 1368-

2  69 (9th Cir. 1994), <u>Clayborn v. Camilla</u>, 128 Va. 383, 389-90, 392

3  (1920)).)   The City rejoins that the mineral rights at issue and New

4  Verde's interest in "the underground workings and spaces made by the

5  removal of the minerals" are not easements because they constitute

6  separate estates in land.   (Pl.'s Reply at 7:20-8:8.)

7         "CERCLA gives no definition of 'owner'[; therefore,] the

8  statutory terms have their ordinary meanings . . . and we read the

9  statute as incorporating the common law definitions of its terms."

10  <u>Long Beach</u>, 32 F.3d at 1368.   While "defendant's status as an owner

11  under common law [is] necessary to being an owner under CERCLA[,]" it

12  must be determined whether the nature of that ownership is sufficient

13  for purposes of CERCLA liability.   <u>Id.</u> at 1369 n.5.

14         To determine what New Verde owns, the court looks to

15  California law.   <u>See</u> <u>United States v. Burlington Res. Oil & Gas Co.</u>,

16  2007 WL 773716, at *1 (W.D. La. Mar. 9, 2007) (looking to state law to

17  determine the common law ownership of a facility).   Under California

18  case law, it is clear that a mineral right is not an easement since

19  mineral rights constitute a "separate fee simple estate[] in the land

20  . . . .")   <u>Nevada Irrigation Dist. v. Keystone Copper Corp.</u>, 224 Cal.

21  App. 2d 523, 524, 526-27 (1964); <u>see also</u> <u>Callahan v. Martin</u>, 3 Cal.

22  2d 110, 116-18 (1935) (noting that solid mineral rights created an

23  interest in reality, with an absolute title to the mineral rights,

24  unlike oil and gas mineral rights, which are in the nature of a *profit

25  a prendre* — an interest in land similar to an easement); <u>Gerhard v.

26  Stephens</u>, 68 Cal. 2d 864, 878, 880 (1968) (noting that solid mineral

27  rights are a "definite corporeal real property" unlike *profits a

28  prendre*, or easements).   Therefore, Defendants' argument that New

Verde's mineral rights ownership interests do not make them liable parties under CERCLA since those rights are akin to easements is rejected.

Defendants further argue that New Verde's ownership of mineral rights only exist in an area where minerals could be extracted that is deeper than fifty feet below the surface at the City's WWTP property, and contend there is no evidence that "any portion of the Drew Tunnel or Massachusetts Hill Mine lies below fifty feet within the physical boundaries of the WWTP property." (Defs.' Opp'n at 6 n.4.)  The deed to the WWTP property, however, provides New Verde "the perpetual right and ownership of all veins [from which minerals could be extracted more than fifty feet below the surface, including] the apexes of which may be found on the surface of the real property . . . and all extralateral rights in connection with such veins. . . ." (Thayer Aff. Ex. C (1972 Deed).)  Accordingly, New Verde's mineral rights ownership includes the contours and substance of such veins, even those that might exist on the surface and/or within fifty feet thereof.

2. Current Operator

The City also argues that Newmont Mining Corporation is exposed to liability as a current operator.

> CERCLA liability may turn on operation as well as ownership, and nothing in the statute's terms bars a parent corporation from direct liability for its own actions in operating a facility owned by its subsidiary.

United States v. Bestfoods, 524 U.S. 51, 64 (1998).

The City argues that "Newmont's decision-making authority, its active environmental investigations, evaluations of potential profitability, and transfers of portions of the Empire-Star Mine

facility, establish Newmont's operator liability under CERCLA."
(Pl.'s Mot. at 11:9-13:20.)  Defendants rejoin that "the Massachusetts
Hill Mine workings, closed in 1901, and has not been operated for more
than 100 years."  (Defs.' Opp'n at 9:17-20.)

> [A]n operator is simply someone who directs the
> workings of, manages, or conducts the affairs of a
> facility.  To sharpen the definition for the
> purposes of CERCLA's concern with environmental
> contamination, an operator must manage, direct, or
> conduct operations specifically related to
> pollution, that is, operations having to do with
> the leakage or disposal of hazardous waste, or
> decisions about compliance with environmental
> regulations.

Bestfoods, 524 U.S. at 66-67.

        The City has not shown that the facility includes more than
the Massachusetts Hill Mine and the Drew Tunnel; therefore, the
question is whether the City's evidence of operation of the facility
is sufficient to establish operator liability under CERCLA.[3]  The
evidence the City presents is insufficient to sustain its position
that Newmont Mining Corporation is liable as a current operator.
Accordingly, this portion of the City's motion is denied.

3. Past Owner or Operator

        The City also argues that Newmont Mining Corporation is
liable as a past owner and operator of the facility because Empire
Star Mines Company operated the Empire-Star Mines, which included the
Massachusetts Hill Mine, from 1929 to 1956; Empire Star Mines Company
later merged into Newmont Mining Corporation; Newmont flooded the

_____

        [3]    This evidence consists of Newmont Mining Corporation studies
assessing control and treatment options for the Drew Tunnel discharge,
and evaluations of environmental impairment risks at the Massachusetts
Hill Mine and other properties.  (Eickmeyer Decl. Exs. 4, 3, 44 at
ESMC17146, 17154, 17155.)

Empire-Star Mines in the 1950s; and "Newmont's decision-making authority, its active environmental investigations, evaluations of potential profitability, and transfers of portions of the Empire-Star Mine facility, establish Newmont's operator liability under CERCLA." (Pl.'s Mot. at 9:21-26, 13:18-20; Pl.'s SUF ¶ 4.)  Defendants rejoin that the Massachusetts Hill Mine closed in 1901, and that "[n]o Defendant ever operated the facility," and no Defendant managed or controlled Empire-Star properties.  (Defs.' Opp'n at 9:19-21; Defs.' Resp. to SUF ¶¶ 3, 4.)

Section 107(a)(2) of CERCLA creates liability for "any person who **at the time of disposal** of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."  42 U.S.C. § 9607(a)(2) (emphasis added).

Whether a disposal occurred at the Massachusetts Hill Mine after 1901 involves genuine issues of material fact which must be resolved at trial.  Accordingly, this portion of the City's motion is denied.

4. Subsidiary Liability

The City further argues that Newmont Mining Corporation is liable for the acts of its subsidiaries (the other named Defendants) because those subsidiaries are "controlled and operated by Newmont Mining Corporation whether as subsidiaries, divisions, or agents" and "both a principal and an agent are liable for the agent's acts within the scope of the agent's authority."  (Pl.'s Mot. at 11:3-16.) Defendants respond that "the activities [purportedly establishing control] pointed to by the City fall within . . . corporate norms" of control of a subsidiary by its parent.  (Defs.' Opp. at 11:13-19.) Since genuine issues of material fact exist as to whether any

Defendant other than New Verde is an owner or operator of the facility, the only issue that needs to be addressed with regard to subsidiary liability is whether Newmont Mining Corporation is liable for the acts of New Verde.

A "parent 'corporation is [itself] responsible for the wrongs committed by its agents in the course of its business . . . ." Bestfoods, 524 U.S. at 65 (quoting Mine Workers v. Coronado Coal Co., 295 U.S. 344, 395 (1922)). The City, however, has provided no evidence that New Verde acted as an agent for Newmont Mining Corporation when it acquired the mineral rights to the facility. Accordingly, subsidiary liability has not been established on this ground, and this portion of the City's motion is denied.

D.   Response Costs

The City argues that an order should issue requiring Defendants to reimburse the City for necessary response costs it has incurred in the amount of $2,100,000 to date, and for future costs. (Pl.'s Mot. at 14:12-21.) Defendants rejoin that the City's evidence "is clearly insufficient at a summary judgment sta[g]e to prove such costs were incurred or reasonable or necessary" in part because it appears to include attorneys fees and settlement costs that Defendants argue are not compensable under CERCLA. (Defs.' Opp'n at 12:22-27.)

The City has the burden of showing that its response costs are "necessary" and "consistent with the national contingency plan." 42 U.S.C § 9607(a)(4)(B); Carson Harbor Vill. Ltd. v. County of Los Angeles, 433 F.3d 1260, 1265 (9th Cir. 2006). Since the City has not satisfied this burden, its motion on this issue is denied.

IV.   Summary

The City has satisfied the first three relevant elements of its CERCLA section 107 claim as to New Verde, but fails to satisfy the fourth element; hence, summary adjudication on its CERCLA claim is denied.  However, no genuine issue of material fact has been shown to exist on the following issues and therefore they are "deemed established, and the trial shall be conducted accordingly": (1) The Massachusetts Hill Mine and the Drew Tunnel together meet CERCLA's definition of a facility; (2) "a release of a hazardous substance" has occurred from the facility; (3) New Verde Mines LLC currently owns the mineral rights to the Massachusetts Hill Mine and the Drew Tunnel and such ownership interests are sufficient to meet CERCLA's definition of an "owner."  Fed. R. Civ. P. 56(d); In re Gen. Corp. Antitrust Litig., 490 F. Supp. 1089, 1102-03 (N.D. Cal. 1980).

IT IS SO ORDERED.

Dated:  December 3, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge