IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
CITY OF GRASS VALLEY,              )
                                   )   2:04-cv-00149-GEB-DAD
              Plaintiff,           )
                                   )
       v.                          )   ORDER re: IN LIMINE
                                   )   MOTIONS
NEWMONT MINING CORPORATION, a      )
corporation; NEWMONT USA LIMITED,  )
a corporation; NEWMONT NORTH       )
AMERICAN EXPLORATION LIMITED, a    )
corporation; NEW VERDE MINES LLC,  )
a limited liability company,       )
NEWMONT REALTY COMPANY, a          )
corporation,                       )
                                   )
              Defendants.          )
_____)
```

Defendants move in limine to exclude portions of the testimony of Robert Moran ("Moran") and Keith O'Brien ("O'Brien"), both of whom are Plaintiffs' expert witnesses. Plaintiff opposes the motions. Plaintiff moves "to preclude references to empty chair defendants at trial." Defendants oppose the motion.

1

## I. Testimony of Robert Moran

**A. Moran's Testimony Regarding Defendants' Awareness of Potential Liability**

Defendants seek exclusion of Moran's testimony concerning Defendants' alleged awareness of potential liabilities and water contamination in the Grass Valley Area.  (Mot. in Limine to Exclude Testimony of Robert Moran ("Moran Mot.") at 3:11-12.)  In Opinion 1 of Moran's expert report, he states that "Newmont was aware, since at least the 1980s, that it had potential environmental liabilities with respect to its properties in the Grass Valley Area."  (Aff. of Alison Thayer in Supp. of Mot. in Limine to Exclude Testimony of Robert Moran, Ex. A ("Moran Report") at 3.)  In Opinion 3 of Moran's expert report, he states that "based on Newmont's experience at many of its other metal mine sites, the corporation was aware that such mine waters probably had chemically reacted with sulfide-rich and metal-laden rock to mobilize hazardous substances resulting in contamination and pollution of the local surface and ground waters."  (Id. at 5.)

Expert evidence is admissible under Federal Rule of Evidence ("Rule") 702 if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."  Fed. R. Evid. 702.  "For an expert's testimony to be admissible under [] Rule [702], [] it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help."  Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir. 1989); see SEC v. Lipson, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("Expert testimony

may not be used merely to repeat or summarize what the jury independently has the ability to understand.").

Defendants argue that "a determination of what was known by particular Defendants at any given time is well within the comprehension of the jury and the Court without the aid of Dr. Moran's testimony," since his opinion is "based solely upon his interpretation of 'numerous memos and other documents,' which will themselves be presented to the jury and the Court." (Moran Mot. at 3:20-22, 4:17-18; see Moran Report at 3, 5 (stating that Moran's Opinions 1 and 3 are based on "numerous memos and other documents" authored by "Newmont employees or representatives").) Plaintiff counters that "Dr. Moran's 35 years of experience advising mining companies on environmental matters makes him uniquely qualified to testify regarding industry practices and knowledge." (Opp'n to Mot. to Exclude Testimony of Robert Moran at 5:18-19.) However, Plaintiff has failed to show that the jury would not be capable of evaluating the evidence and determining whether and/or when Defendants were aware of potential environmental liabilities in the Grass Valley area. Therefore, this portion of Defendant's motion is granted, and Moran's testimony concerning whether Defendants were aware of potential liabilities and water contamination in the Grass Valley Area is excluded.[1]

**B. Moran's Testimony Regarding Appropriate Environmental Response**

Defendants seek exclusion of Moran's testimony regarding whether Defendants conducted an appropriate environmental response,

---

[1] This ruling does not affect the admissibility of Moran's testimony described in the portion of Opinion 3 stating, "Oxidation of metal-bearing rocks to generate mine drainage which results in contamination of surface and ground waters and potential toxicity to aquatic life is a process that has been understood throughout the mining industry for more than one hundred years." (Moran Report at 5.)

but fail to show they should prevail on this portion of their motion. Accordingly, it is denied.

**C. Moran's Testimony Regarding Stockholder Rights and Fiduciary Responsibilities of Corporate Officials**

Defendants seek exclusion of Moran's testimony that "corporate officials [] have a fiduciary responsibility to their stockholders to evaluate and report such actual and potential liabilities," since Moran is not an expert on stockholder rights or the fiduciary responsibilities of corporate officials. (Moran Mot. at 6:11-12; Moran Report at 4.) Expert witnesses may not provide expert testimony on subjects on which they are not qualified as experts. United States v. Chang, 207 F.3d 1169, 1173 (9th Cir. 2000) (holding that trial court acted in its discretion in refusing to allow expert in history of issuance of counterfeit foreign securities to testify regarding authenticity of security certificate at issue "given that he had no experience in identifying counterfeit foreign securities"). Plaintiff has failed to show that Moran is a qualified expert on the fiduciary responsibilities of corporate officials. Accordingly, the motion on this ground is granted.

## II. Testimony of Keith O'Brien

**A. O'Brien's Testimony Regarding Property Interests and Operation of the Massachusetts Hill Mine**

Defendants seek exclusion of portions of O'Brien's testimony (1) on the property and other legal interests held by Defendants in the Massachusetts Hill Mine and other "underground mine workings" in the Grass Valley Area, and (2) on whether any Defendant continued operations at the Massachusetts Hill Mine after 1929. (Mot. in Limine to Exclude Testimony of Keith O'Brien ("O'Brien Mot.") at 3:12-5:12.)

4

1  In Opinion 1 of O'Brien's report, he states that "Water from a mine
2  portal . . . emanates from underground mine workings owned by Newmont
3  Mining Corporation and discharges onto the WWTP property. . . .
4  Newmont acquired North Star Mines Company in 1929 after North Star
5  Mines Company had acquired the Massachusetts Hill Mine in 1894."
6  (Aff. of Alison Thayer in Supp. of Mot. in Limine to Exclude Testimony
7  of Keith O'Brien, Ex. A ("O'Brien Report") at 2.)  In Opinions 5 and
8  6, O'Brien states that hazardous substances discharged from "Newmont's
9  underground mine workings . . . ."  (Id. at 21, 25.)  In Opinion 7,
10 O'Brien states that

> Newmont is solely responsible for the discharge of
> hazardous substances contained within the mine
> drainage flowing onto the City's WWTP property.
> In and around the City's WWTP property, Newmont is
> a past, successor, and/or present owner and
> operator of underground mine workings and controls
> the mineral rights. . . . Based on my extensive
> review of the available information, there are no
> other sources of mining wastes but for those from
> Newmont.

17 (Id. at 36.)  Opinion 8 states in its entirety that "[a]fter Newmont
18 acquired North Star Mines Company and started operating Empire Star
19 Mines Company in 1929, Newmont continued mining operations at the
20 Massachusetts Hill mine."  (Id. at 40.)
21         Defendants argue this testimony should be excluded since
22 O'Brien is not qualified as an expert in the area of property
23 interests, Defendants' historical operations or "the legal status of
24 the parties as a past or present 'owner or operator' in this case."
25 (O'Brien Mot. at 4:17-20, 5:7-9.)  O'Brien is a hyrdogeologist, and
26 has not been qualified as an expert in historical property rights.
27 (See O'Brien Report at 60.)  Defendants have shown O'Brien is not
28 qualified to give expert testimony on whether Defendants own or owned

5

1  any property right in those mines, or operated those mines after 1929.
2  See Chang, 207 F.3d at 1173 (holding that expert witness may not
3  provide expert testimony on subjects on which he is not qualified as
4  an expert).
5       Plaintiff counters that "[t]he trier of fact needs an
6  analysis of the voluminous records in this case . . . [and] a context
7  for evaluating the facts of this case in the context of environmental
8  investigation and remediation."  (Opp'n to Mot. in Limine to Exclude
9  Testimony of Keith O'Brien ("O'Brien Opp'n") at 9:21-24.)  In essence,
10 Plaintiff argues it is entitled to present summary evidence, and does
11 not otherwise respond to Defendants' arguments.  Defendants' motion is
12 granted, but this does not reach the aspect of Plaintiff's response
13 concerning non-expert testimony.

**B. O'Brien's Testimony Regarding Plaintiff's Knowledge of the Drew Tunnel Prior to the Excavation Work**

16      Defendants seek exclusion of O'Brien's testimony regarding
17 when and how Plaintiff first discovered the drainage was emanating
18 from Drew Tunnel.  (O'Brien Mot. at 5:14-16.)  O'Brien states in
19 Opinion 6 that Plaintiff "encountered the drainage emanating from Drew
20 Tunnel due solely to its work conducted to expand the WWTP. . . . It
21 was only after preliminary excavation work in the area of the 'spring'
22 that the true nature of the 'spring' was known."  (O'Brien Report at
23 25.)  Defendants argue that "the jury is perfectly capable of
24 assessing the witnesses' and [Plaintiff's] statements and making its
25 own determination as to whether [Plaintiff] had knowledge of the Drew
26 Tunnel prior to the excavation work."  (O'Brien Mot. at 6:5-8.)
27      Plaintiff counters that "O'Brien does not intend to offer an
28 opinion on [Plaintiff's] 'state of mind' . . . but rather intends to

.

offer his opinion that [Plaintiff] 'took due care in addressing the discharge of hazardous substances . . .' and that the discharge 'was not reasonably foreseeable' to [Plaintiff]." (O'Brien Opp'n at 5:18-22.) However, Defendants have shown that O'Brien's testimony on when and how Plaintiff first discovered the drainage was emanating from Drew Tunnel should be excluded; therefore, this testimony is excluded. This exclusion does not reach the points Plaintiff raises above on due care and reasonable foreseeability.

### III. References to "Newmont"

Defendants argue that Moran and O'Brien should be precluded from referring to all Defendants collectively as "Newmont," since Moran and O'Brien "offer[] no justification for [their] treatment of all Newmont-related entities as one and there is no basis here to ignore the corporate form." (Moran Mot. at 7:7-8.) Plaintiff counters that "Newmont does not itself respect the corporate form, either in its business dealings or its communications with this Court . . . ." (O'Brien Opp'n at 11:12-13.) Since it is unclear what evidence will be developed at trial, and the record is insufficient for issuance of the requested in limine ruling, the motion is denied.

### IV. References to Empty Chair Defendants

Plaintiff "requests an order prohibiting evidence or argument regarding liability of other potentially responsible parties not identified in the pleadings." (Pl.s' Mot. at 3:15-17.) Plaintiff argues "Newmont was obligated under [Federal Rule of Civil Procedure] 26(a) to disclose any third parties that it contends were responsible for the City's harm" and therefore Defendant should not be permitted to use such evidence at trial under Federal Rule of Civil Procedure

37(c)."[2]  (Id. at 4:12:-24.)  Plaintiff also argues "the City submitted specific interrogatories and document requests to Newmont asking Newmont to identify persons having knowledge of, and documents related to, property adjacent to the City's wastewater plant, and control of the Drew Tunnel from 1850 to the present [and Defendants] identified no third parties or evidence showing potential third party liability."  (Id. at 4:24-5:2.)  Plaintiff further argues that when it "subsequently sent Newmont specific contention interrogatories, asking Newmont to identify witnesses and documents supporting Newmont's 'divisible injury,' and 'apportionment' claims . . . as well as Newmont's 'superceding and/or intervening actions of individuals' claims . . ., Newmont refused to provide substantive responses, asserting: '[T]he City has exceeded the number of interrogatories permitted under the federal rules without leave of court or written stipulation.'"  (Id. at 5:3-9 (citations omitted).)

Defendants state they "have not asked this Court, and do not intend to ask this Court, to hold nonparties liable as potentially responsible parties, as the City suggests [and] do not intend to attempt to use evidence at trial that was not disclosed during discovery."  (Defs.' Opp'n at 2:7-10.)  Defendants argue that Plaintiff's motion "is premature, overbroad, and lacks the specificity necessary for this Court to decide what evidence of non-party interests and activities is or is not admissible."  (Id. at 2:18-20.)  Defendants further argue "the City cannot point to any evidence that the Defendants ostensibly failed to produce [as required by Rule 26] and now seek to use at trial[, and] Defendants are entitled to

---

[2] All subsequent references to Rules are to the Federal Rules of Civil Procedure.

introduce at trial any admissible evidence that has been produced in the course of litigation, even if such information relates to third-party interests. [Further,] Defendants have complied with all discovery requests from the City to the extent required by the Federal Rules." (Defs.' Opp'n at 8:10-20, n.3.)

This motion is not crystalized enough for decision, and appears to seek decision on a discovery issue that should have been resolved earlier in the proceeding. See Weiss v. La Suisse, Society D'Assurances Sur La Vie, 293 F. Supp. 2d 397, 407-08 (S.D.N.Y. 2003) (denying motion in limine where "[n]o particular documents or testimony have been identified"); Freeman v. Allstate Life Ins. Co., 253 F.3d 533, 537 (9th Cir. 2001) (finding no abuse of discretion where "[t]he district court declined to [exclude evidence] because [movant] failed to prosecute the issue before the magistrate judge as required by E.D. Cal. Local Rule 72-302(c) . . . ."). Therefore, the motion is denied.

Plaintiff also argues, given that "CERCLA is a strict liability policy," "evidence of non-parties' ownership of title to property in Grass Valley or potential responsibility for the contamination at issue in this case would have minimal if no probative value with respect to liability in this case" and, therefore, should be excluded as irrelevant evidence. (Pl.'s Mot. at 8:24-9:5.) Defendants rejoin that evidence of property ownership is relevant to rebutting duty of care and foreseeability of harm with regards to the City's negligence claim and "goes directly to whether any Defendant can be held liable under CERCLA as a past owner or operator." (Defs.' Opp'n at 4:20-5:11.)

1   Evidence should only be excluded in an in limine proceeding
2 "when the evidence is clearly inadmissible on all potential grounds."
3 <u>Bouchard v. Am. Home Prods. Corp.</u>, 213 F. Supp. 2d 802, 810 (N.D. Ohio
4 2002).  This has not been shown.  Therefore, Plaintiff's motion is
5 denied.
6   IT IS SO ORDERED.
7 Dated:  February 26, 2008

_____
GARLAND E. BURRELL, JR.
United States District Judge